UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREUDENBERG – NOK, G.P.,

       Plaintiff,                CIVIL ACTION NO. 05-CV-70421-DT

vs.

                                    DISTRICT JUDGE JOHN CORBETT O'MEARA

AUTO JUNTAS, S.A.,          MAGISTRATE JUDGE MONA K. MAJZOUB

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION**: Defendant's Motion to Compel Arbitration and Motion to Stay Proceedings Pending Arbitration should be **GRANTED** pursuant to 9 U.S.C. §§ 3 & 4.

\*\*\*

### I. BACKGROUND

Before the Court is Defendant's Motion to Compel Arbitration, and in Addition or in the Alternative For Stay Pending Arbitration. The parties are manufacturers and suppliers of automotive parts. On December 17, 2001, the parties entered into a Confidentiality and Nondisclosure Agreement (NDA) that provided, in relevant part, "[w]hereas, the parties intend to enter into a Supply Agreement which defines the ongoing business relationship between FNGP and Ajusa." On January 14, 2002, the parties executed the contemplated Supply Agreement which contained the following provision:

> Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, or the legal relationships established by this Agreement, shall in the first instance be attempted to be resolved by the parties through good faith negotiations during a period of one month. If such negotiations are unsuccessful, the dispute shall be referred to and finally resolved by arbitration to be conducted according to the Arbitration Rules and Regulations of the International Chamber of Commerce in Paris.

(Section 38 of Supply Agreement, Defendant's Exhibit A).

On an unspecified date, Plaintiff provided Defendant with notice of its intent to terminate the Supply Agreement and Defendant filed a request for arbitration before the International Chamber of Commerce (ICC) in Paris.  Plaintiff filed suit in Wayne County Circuit Court alleging that Defendant breached the terms of the NDA.  Defendant removed the suit to federal court and filed the instant motion arguing that Plaintiff's claims, if any, arising out of the NDA are subject to the arbitration provision of the Supply Agreement and that those claims must be presented before the ICC.  Pursuant to 9 U.S.C. §§ 3 & 4, Defendant asks this Court to issue an Order compelling Plaintiff to arbitrate its claims arising from the NDA before the ICC and stay the instant proceedings pending the ICC's ruling.  Plaintiff asserts, however, that the NDA is a separate contract which was not intended to be covered by the arbitration provision contained within the Supply Agreement.  Therefore, the question for this Court is whether the arbitration provision of the Supply Agreement encompasses the NDA such that a dispute arising from the NDA must also be arbitrated before the ICC.

## II.  APPLICABLE LAW

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et. seq.*, dictates that courts enforce parties' written agreements to arbitrate certain matters.  Specifically, 9 U.S.C. § 4 provides, in part, that:

> A party aggrieved by the allege failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  "By its terms, the Act leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)(emphasis in original).  The FAA applies with equal force to contracts between domestic and

international entities, *Reynolds Jamaica Mines, Ltd. V. La Societe Navale Caennaise*, 239 F.2d 689, 693 (4th Cir. 1956), and specifically authorizes federal courts to compel an arbitration agreement calling for arbitration outside the United States. *See generally* 9 U.S.C. §§ 201-208 (adopting the Convention on the Recognition and Enforcement of Foreign Arbitral Awards); *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n.15 (1973).

Where a party files suit subject to a written agreement to arbitrate, the opposing party may apply to the court for an order staying the matter and/or directing that the matter proceed in arbitration. 9 U.S.C. §§ 3 & 4. Upon motion of the party seeking arbitration, the court should determine whether there is a valid agreement to arbitrate signed by the parties and whether the claims at issue fall within the scope of the arbitration agreement. *Javitch v. First Union Securities*, 315 F.3d 619, 624 (6th Cir. 2003)(citing *AT&T Techs. Inc. V. Communications Workers of America*, 475 U.S. 643, 649 (1986)). Although the obligation to arbitrate is based on the parties' agreement, the Supreme Court has held that:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1982); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1984); *American Radiator & Standard Corp. V. Local & AFL-CIO*, 358 F.2d 455, 458 (6th Cir. 1966)(quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960))("[A]rbitration should not be denied unless it may be said with positive assurance that the clause does not cover the dispute. Doubts should be resolved in favor or coverage."). Therefore, if there is an agreement to arbitrate and the claims at issue are within its scope, the court must order that the claims be brought in arbitration or stay the matter or both, depending on the circumstances.

### III. ANALYSIS AND DISCUSSION

In this case, Plaintiff asserts that his claims arising under the NDA do not fall within the purview of the arbitration provision contained in the Supply Agreement. To support its assertion that the agreements are separate, stand-alone agreements, Plaintiff points out that (1) disputes arising under the NDA are to be governed by Michigan law while disputes under the Supply Agreement are governed by Spanish law, (2) the NDA is to continue in force for five years from the date of termination of the Supply Agreement, and (3) the agreements contain substantially different confidentiality provisions evidencing the parties' intent that the contracts were separate and distinct. Having reviewed both agreements, the Court rejects Plaintiff's assertions and concludes that Plaintiff's claims arising under the NDA should be arbitrated before the ICC for the following reasons.

The arbitration provision contained in section 38 of the Supply Agreement specifically covers "[a]ny dispute arising out of **or in connection with** this Agreement . . ." (Defendant's Exhibit A, Supply Agreement, pg. 16)(emphasis added). Therefore, the arbitration provision was intended to encompass not only disputes arising out of the Supply Agreement, but also any disputes arising "in connection with" the Supply Agreement. Where an arbitration clause is broad "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568 (6th Cir. 2003). Here, Plaintiff has spent considerable effort attempting to persuade the Court that the NDA and Supply Agreement are separate and distinct contracts. However, Plaintiff's efforts fall short for the reason that the arbitration provision of the Supply Agreement covers not only disputes arising under the Supply Agreement but also those disputes arising "in connection with" the Supply Agreement. Thus, even if the NDA and Supply Agreement are separate, the language of the arbitration provision is broad enough as to cover any disputes arising under

a separate NDA if those disputes have arisen "in connection with" the Supply Agreement.

To answer the question of whether Plaintiff's claims arising under the NDA arose "in connection with" the Supply Agreement, the Court need only look to the recitals of the NDA. Specifically, the NDA provides, in part, that:

> WHEREAS, the parties intend to enter into a Supply Agreement ("Supply Agreement") which defines the ongoing business relationship between FNGP and Ajusa.
>
> WHEREAS, in connection with the Proposed Supply Agreement, the Parties have disclosed or propose to disclose to each other certain Confidential Information and Trade Secrets (each as defined below);

(Defendant's Exhibit B, Confidentiality and Nondisclosure Agreement, pg. 1). Clearly, the NDA was entered into "in connection with the Proposed Supply Agreement" and the arbitration provision of the Supply Agreement encompasses disputes arising "in connection with" the Supply Agreement. Reading the two agreements together, the Court finds it difficult, if not impossible, to imagine how Plaintiff's claims arising under the NDA are not subject to the arbitration provision of the Supply Agreement. In fact, it seems logical to conclude that but for the parties' intent to execute the Supply Agreement, there would have been no NDA. *See Highlands Wellmonti*, 350 F.3d at 578 (quoting *Sweet Dreams Unlimited, Inc. V. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993))("In fact, any dispute between contracting parties that is in any way connected with their contract could be said to 'arise out of' their agreement and thus be subject to arbitration under a provision employing this language.").

Other than pointing out that the agreements contain different choice of law provisions and that the NDA is to remain in force for five years after termination of the Supply Agreement, Plaintiff has failed to present any convincing evidence that the NDA was exempted from the purview of the Supply Agreement's arbitration provision. Given the inextricable nature of the NDA and the Supply Agreement, the Court concludes that Plaintiff's claims arising under the NDA arose "in connection

with" the Supply Agreement and therefore those claims are subject to arbitration. Accordingly, Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration should be **GRANTED**.

### IV. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: July 18, 2005                            s/ Mona K. Majzoub
                                                MONA K. MAJZOUB
                                                UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

  I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 18, 2005        s/ Lisa C. Bartlett
                 Courtroom Deputy